Peck, Judge,
dissenting. The act of 1809, ch. 49, abolished the old superior courts and established the circuit and supreme courts, the.supreme court only to have *512 appellate jurisdiction, and original equity jurisdiction is given to the circuit courts. See 4th section of act of 1809, and 26th section same act.
Trie act of 1811, ch. 72, sec. 4, says, “that from and after the passage of this act, the court of errors and appeals in the several circuits of this State, shall have exclusive jurisdiction in all cases in equity arising in said circuits, and that part of the before recited acts which vests the circuit courts with equity jurisdiction, be, and the same is hereby repealed.”
The act of 1813, ch. 72, sec. 4, says, “that the circuit courts from and after the 1st of January next, shall have concurrent original jurisdiction of all causes in equity', of which the court of errors and appeals now have jurisdiction, and that the said courts shall be governed in the exercise of said jurisdiction by the same rules and regulations by which the court of errors and appeals is governed in equity causes.”
The act of 1819, ch. 31, sec. 2, says, “that in all cases in the chancery circuit courts, if either party shall be dissatisfied with the judgment or decree of said court., he, she, or they, shall have a right to pray for and.obtain an appeal to the supreme court, upon the whole matter of law and fact, in the same way and under the same rules, regulations and restrictions as other causes originally commenced in said supreme court are beard and determined.”
The act of 1822, ch. 13, established chancery terms of the supreme court; the 4th section of the act says, “that said court shall not possess original jurisdiction in causes either in law or equity', but appeals and writs of error shall lie from the courts of law and equity holden within the circuits where said supreme courts are holden.”
The act of 1822, supplemental to the former, sec. 10, say's, “that nothing in this act, or the act to which this is a supplement, shall be construed to take from the circuit courts the jurisdiction heretofore byj them entertained; and in all causes in equity' hereafter determined in the circuit courts, an appeal shall lie directly to the supreme *513 Court of tbe district as heretofore, but in said appeal so taken, the cause shall not be open for taking depositions Unless ordered by the supreme court.”
The act of 1824, ch. 14, sec. 14, says, “that the said judges (i. e. of the supreme court) may so modify the rules of practice heretofore established as to bringing up and filing of records, as may expedite the decision of causes and preventtheinconveniences growing out of thechanges contemplated by this act.”
. The act of 1827, ch. 79, sec. 2, takes from the judges of the supreme court original chancery jurisdiction at the several places established by law for holding the several chancery courts, and has no relation to the question before us.
The act of 1801, ch. •— sec. 53, in effect gives the bill of review, or, what is more to the purpose, recognizes it as incident to all decrees, and regulates the practice on it.
With these acts before me, the first inquiry shall be, whether or not the power of entertaining the bill of review once existed in the supreme court? The answer is obvious, that the power did expressly exist; it was incident to tbe. court when it had original jurisdiction in equity; this continued froto 1811 to 1822, and then it is not taken away, for the question before us is, not whether the grant is given, but whether it be taken from the court.
It is a rule in the construction of statutes which give rights, not to suppose them repealed by implication. The right here contended for, is not a right belonging to the court, huta right of the citizen to have, the benefit of the process and proceeding incident to the court, and which has not been taken away. No man, it seems to me, can read the act of 1819, ch. 31,sec. 2, and not be satisfied from the very letter of the act, that the bill of review is retained as to the appeals brought from the circuit courts,“for they shall be heard and determined under the same rules, regulations and restrictions as causes commenced in the supreme court.” The act of 1822, sec. 10, continues the jurisdiction of the circuit court, and says, *514 appeals shall lie directly to the supreme court as heretofore; and no change is made in the practice, except that the court may in its discretion, allow or disallow the taking of depositions. And this is the law at present operating upon appeals from the circuit courts, and these are as much chancery courts as any other in the State.
The chancery courts established by the act of 1827, have the power that the judges of the supreme court possessed as chancellors; but they have no more or greater powers, so that upon the construction of these statutes, the power remains with the supreme court to review her own decrees.
But it is said that the act of 1822, ch. 13, sec. 4, takes away the power, providing as it does, that “the supreme court shall not possess original jurisdiction in cases either in law or equity, but appeals and writs of error shall lie from the courts of law and equity, &c. This brings-us to the question, “is a bill of review an original proceeding?” I answer, in the first place it is not original, but incidental; and in the second place, if it was, it is not taken away even by implication; no book however, makes the bill of review original.
Jeremy speaks of the bill of review thus: “the cause however, before enrolment of the decree, may be re-heard, or afterwards may be reviewed, and in either case affirmed or reversed by the court itself1”
Blackstone says, “In the nature of things it cannot be original; it stands upon the decree,^not by itself; it may as to some matter depart from the decree, as if a newly discovered fact is shown, but still it is predicated on it.” But aside from general expressions used in the books, or from definitions given by lawyers or judges, what does common sense give as the meaning of the term bill of review? “A second examination with a view to amendment or improvement.” This, when applied to the review by the chancellor of his decree, can be understood by any one. Bacon, the father of chancery, as well as the founder of experimental philosophy, knew well the necessity of a second examination with a view to improve-, *515 ment, and he applied it as well in the science of determining questions ox right and wrong, as m the investigation of the laws of nature.
With this definition before us, what is there that dispenses with the use of the process which is given, with a view to re-examination and amendment; is it because we are wiser and better than others, or wiser than the judges of the old superior court, for they possessed the power, wiser than the judges of the supreme court for 10 years between 1811 and 1822, wiser than the chancellor of England, aided by his vice chancellor, his masters and one hundred and forty clerks?
The truth is, that the number of members of the court, their wisdom, or the want of either,has nothing to do with .the question. It is incident to the proceeding as a means ol arriving at the truth, and ought, so long as truth is lovely, never to be departed from. It is, if you please in chancery, what arrest or affirmance of judgment is in law, a mode of reaching the errors of a decree.
But it i ssaid we are a court of error, a revising court, that we in effect review the case when brought before us by appeal. Answer: we decree for ourselves; it is the decree of this court, anew and distinct enrolment that is sought to be reviewed, and the bill of review applies to all such. We are bound to give such judgment, sentence or decree as the inferior jurisdiction ought to have given; (act of 1809, ch. 49, sec. 26 and 27.) What judgment or decree is that? The answer is, that judgment or decree which law in one case, and which equity in the other sanctions. To reach. this, on the equity side, the bill of review is afforded, and the conscience of the chancellor, which must be satisfied, will not be content when pointed to his error, until he has used all the meang afforded him to correct it.
I repeat, that it was no statute which first gave a chancellor the bill of review; it was a plan of his own devising, an ordinance of his own framing; it has never been taken away even by implication, where the court enrolls at length her own decree; and this distinction kept in view sweeps *516 at once away all the argument predicated upon the practice in the House of Lords; for we must not forget, that that body affirms, or dismisses without doing more. -The cause is either not retained at all, or if retained, affirmed.
This is not the practice of this court. This court, on the premises decrees for herself, and on that decree the right either to petition in the same term to re-hear, or if after enrolment, by bill, asks a review.
Gentlemen have told us of the consequences resulting from such a course; that it leads to endless litigation, and that by calling in the party again it is assuming original jurisdiction. On the first of these objections it is sufficient to remark, that it is as well not to end, as to come to erroneous conclusions, unless it be that men delight rather in wrong than the establishment of right. The argument will be found to have no charms for any but such as have succeeded regardless of the means used. To the second point I have spoken, but may here add, that it is not original but incidental. Whatever is required to be done, the means of doing it follow by implication. In the case of Trimble vs. Rankin, immediately after the organization of the supreme court, Trimble took up his cause (a caveat) and filed his record, claiming the writ of error from the supreme court under the 12th section of the act of 1811, ch. 72. When the cause was called in the supreme court, it was said that Rankin knew nothing of the existence of the cause there. The court said that they had no original ■jurisdiction, yet they had of writs of error, and with that power, was given by implication, the power of sending out a writ to bring in the party and compel him to join in error and hear judgment.
Since that, in State cases it has been the constant practice to send out an original process to bring in a defendant when the recognizance has failed.
JVe exeats have issued from the supreme court pending suits there to save mischief by removing property.
bcire Facias’s issue almost daily to fix the liability of bail, to revive suits, and the like. These are all of them as much original processes as the mere notice to *517 a party to appear and hear errors on a bill of review. The whole mistake arises in supposing that by implication of repeal, the court lost the use of a remedy, the very rules, practice and limitations of which are given on the decree, by the act of 1801, ch. 6, sec. 53. How much more rational to suppose that the right was not taken away, and that the right existing, can only be made effectual by retaining the process, which is incidental, as the numerous cases cited, prove.
But another fact not to be overlooked in this discussion is, that the petition to re-hear will lie in this court. That Is admitted. This is full proof that the bill of review lies also. In Blackstone, where treated of, they are found side by side; so in Jeremy on equity jurisdiction; and generally the books of practice place them together, marking the distinction, and the only one, that the petition goes before enrolment, the bill of review after; but both follow, and are intended to operate upon the decree.
We have it asserted,- that Virginia in her court of appeals, South Carolina and New York in the courts of the last resort, deny the bill of review, and this is supposed to be in analogy to the proceedings in the House of Lords. It is enough for me to say, that in this court there is no analogy. None of the tribunals spoken of decree, as if the cause was original in their (onrts. But we do, and that makes the distinction. We deny the influence of the statutes of other States over the rights of our citizens. Yet to aid the repeal by implication, of a statute giving a right to the citizen, we call to our aid the practice in those States, to make out the implication. That practice is unsuited to our condition, is at war with our statutes, and can have no influence, for we are commanded to do what the inferior jurisdiction ought to have done. Ought she to have reheard? So ought we. Ought she to have affirmed? So ought we, and so of reversal. This is in exact coincidence with our course of jurisprudence. I)o not our statutes give a second jury trial in appeals? Do they not give a second writ of error, first into the circuit and then into the supreme court, in the *518 same cause? Do they not give concurrent jurisdiction in equity to two courts, the circuit and chancery? Have they not guarded the right of appeal, broad and ample jn all cases? Have they not declared that it is the merits which should be attained without resort to technicality? And yet to attain all these ends, we as Chancellors, are to be deprived by implication of a necessary auxiliary. I pronounce that it is impossible to come to such a result without forcing conclusions.
I beg to be told, how infants, femes covert, persons insane, and those strippéd of estates by fraudulent decrees obtained in the court of the last resort, are to have them corrected: can it be said that such cases will not arise? I answer, no. Set the example that revision cannot be had, or that the mode and place is doubtful, and what will follow? This is an extensive field. It would require time, and more health than I have, to pursue it.
It will now be my purpose to show that the legislature intended to leave the bill of review precisely where I have placed it. In the first place, her members knew (for many of them were lawyers) that decrees pro jorma had often been pronounced, in both the circuit and chancery courts, with a view solely to the appeal, and to obtain the decree in the supreme court. This reason, though of itself sufficient, weighs nothing when compared with the peculiar condition of the judges of the supreme court. Appeals lie to this court from about twelve Chancellors; these are sent up from under the hands of about sixty clerks and masters. The condition of many of these records is so well known to lawyers, that naming of the subject is sufficient. Suddenly the judges are commanded to the Western District, and have there opened before them a case between two Universities, a revolutionary soldier, half a dozen occupants, and one who calls himself an innocent purchaser. To name the variety of cases in that division of the State, where compacts between States, rights partly acquired by ancient statutes and partly by modern, would be endless. Hurried (as we must be) to reach another court, say Jonesborough, 450 miles *519 distant, is it not to be supposed that the court can make a mistake in law, which when pointed out, she would he proud to correct?
But at Jonesborough what is presented? A set of causes on land titles peculiar to that section, above Brown’s line. Here the land law is as wholly different from other portions of the State, as if in another government; and are we not to anticipate the possibility of error in law on the face of a decree?
At Knoxville we haye brought before us college, academy and common school rights, growing out of compacts with North Carolina and the United States, and involving the construction of the constitution of the State; also, rights acquired atthe Hiwassee land sales,conflicting with Indian reserves, arising under the treaty. From the northern boundary of the State are brought before uS titles issued in Virginia and Kentucky, validated by act of assembly, but conflicting with entries and grants both from North Carolina and Tennessee.
At Sparta, at Nashville; and at Reynoldsburgh, without hooks; questions equally new and novel arise. To say nothing more, the freehold, which is a favorite estate in all countries, in this of ours emanates from about forty sources; and such is the conflict of right in its origin,, that in many instances the resort is to a court of equity.
These, with the one hundred sources of litigation not enumerated, growing out of commerce, fraud, accident and trust, make up the business of a court of very general resort. Our dockets prove that near half the causes in the tribunal of the last resort, are on the equity side, awaiting our decrees. To say under such circumstances, with the statute-book before him, that the legislator would have taken away the bill of review, is taxing' too heavily our credulity.
The bill of review at the framing of the constitution was, and still is part of the law of the land, operating' upon decrees in the tribunal that renders them; and’ there is no point that ought to be touched with more tenderness, than that of taking away a remedy contrived to *520 attain right and justice. These, in the language of the' constitution, shall be administered. Destroy the means, an(J the right falls.
Chancery has been the handmaid of all courts in affording process to meet exigences. She has done so in the face of tyranny, to break loose the iron hand of power when grasping against conscience. Shall chancellors in a free State, recede when light, science and knowledge are enlarging and eliciting truth around them? Shall they be the only ones content, by forcing construction, to rest amid the ruin and rubbish of their own errors?
Bill of review dismissed*